THE WINDHAM COTTON MANUFACTURING COMPANY *vs.* THE HARTFORD, PROVIDENCE AND FISHKILL RAILROAD COMPANY AND OTHERS.

The defendants being a railroad corporation, remonstrated against the acceptance of the report of H as a committee in a bill in chancery, because while H was acting as such committee, his wife was a shareholder in an incorporated bank, which bank had stock in said railroad, as security for a loan of money. Held, that H was not disqualified from acting as such committee, on the ground that he was a party to such bill, but was disqualified, as being interested in the event of the suit, if the objection had been taken at the proper time.

Where, however, such remonstrance did not allege, and it was not shown, that this fact was unknown to the remonstrants; when such committee was appointed; it was held, that the omission amounted to a waiver, and that the report ought to be accepted.

Two railroad corporations, whose roads were constructed parallel and near to each other, on the northerly side of the plaintiffs' ware-house, agreed to make and maintain a turn-out or side track for the accommodation of the plaintiffs from either or both said companies' main tracks to said ware-house, and the plaintiffs claimed, that the turn-out from the track farthest from said ware-house should cross the track of the other road and a single side track be laid from thence to their ware-house, while the defendants claimed that said turn-out should be made on the outer sides of said roads respectively. On a bill in chancery for a specific performance of said contract, the committee to whom the cause was referred, found that a single side-track laid as the plaintiffs required, would, unless managed and used with proper care and prudence, expose the public travel along said railroad to serious danger from collisions and other causes, but if the same were under the supervision of the railroad companies, and a reasonable degree of prudence and care were exercised in its management and use, the danger arising therefrom would be very slight and scarcely appreciable, but did not find that it was indispensable or necessary that said turn-out should be constructed in such mode, nor that some other mode would not answer as well as that. Held, 1. That if the contract required said turn-outs to be made as required by the plaintiffs, the court would not specifically enforce it, but leave the plaintiffs to their remedy at law. 2. That a reasonable construction of said contract, might require said turn-outs to be made as claimed by the defendants, or in some other manner, not proposed by either the plaintiffs, or the defendants. And 3. That there should be further enquiry as to the best mode of doing this.

THIS was a bill in chancery, brought by the Windham Cotton Manufacturing Company, against the Hartford, Providence and Fishkill Railroad Company, and the New London, Willimantic and Palmer Railroad Company, to enforce the specific performance of an agreement. The superior court, at the April term, 1853, appointed James A. Hovey, Esq., a committee, to hear the parties, and find and report the facts in the case. At the next term of the court, the committee, having heard the parties, made his report, finding the following facts.

Previous to the 29th day of August, A. D. 1849, the defendants, in accordance with the provisions of their charter, had laid out, and located the roads, which they were author-

ized to make, and maintain, across certain lands of the plaintiffs, in the village of Willimantic, established the grade thereof, and caused the damage done thereby to be assessed, and the amount thereof, being thirty-five hundred dollars, to be paid to the plaintiffs. On the 29th day of August, 1849, the defendants determined to change said location, and grade, and to enable them to do so, entered into the following agreement in writing with the plaintiffs:

" The Windham Cotton Manufacturing Company agree to the change of centre line and change of grade, as is described in an agreement, this day made, between the Smithville Cotton Manufacturing Company, and the Hartford, Providence and Fishkill Railroad Company, and the New London, Willimantic and Palmer Railroad Company, and that the centre line and roadway, heretofore laid over and across said Windham Manufacturing Company's land, may be changed to conform thereto, both as to location and grade. And, in consideration of the receipt of three thousand five hundred dollars, by said manufacturing company, from said Hartford, Providence and Fishkill Railroad Company, and of the agreement of each of said railroad companies, to give said manufacturing company five shares of stock in each of their respective railroads, said manufacturing company agree to make, execute, and deliver, within ten days from the date hereof, a good and sufficient deed, in the usual form of conveyance, to said railroad companies, conveying to them jointly, the land over which said new location will be placed, as now agreed herein to be changed, the same to be of such width as may be needful to make, and forever maintain a railroad bed, at its graded surface, of forty feet in width in excavations, and thirty feet in width, at the graded surface, in embankments, with such additional width as may be needful for permanent slopes of earth to such excavations, and embankments, and for necessary drains, and ditches, along said railroads. Said Windham Manufacturing Company are not to erect, or place any building within forty feet

of the centre line of said railroads, on either side thereof. Said railroad companies have the right to use a strip of land, not exceeding twenty feet wide, outside of said road bed, on each side of said centre line, to pass and repass, for all necessary purposes of repairing and maintaining said road beds, drains and ditches. The railroad companies are to pay one dollar a rod in lieu of fencing, and said manufacturing company, in consideration thereof, agree to make and maintain good and lawful fences, between their lands and said railroads, and shall make and place no part of such fences within twenty feet of said centre, and shall so place, make, and maintain, such fences, as not to injure the stability of the railroad bed, nor endanger the safety, or increase the expense of the operations of said railroads, or either of them, reserving a right for said manufacturing company to cross said railroads at convenient places, not exceeding three in number, at such times as will not interfere with the use of the same by said railroad companies; said crossings to be made and maintained by said railroad company. Said deed is to be executed and delivered within ten days from date; but if within said ten days from date, said manufacturing company give notice that they prefer submitting to arbitration the question as to amount of damages to be paid for such deed of their lands, the parties bind themselves to submit the matters in difference to the final award of Elisha Harris, late governor of Rhode Island, David Whitman, of the town of Cranston, in said state, Jedediah Leavens, of the town of Norwich, Connecticut; and the parties hereby do submit said question to said arbitrators aforesaid, upon the basis of this agreement; the hearing to be had with as little delay as may be, and so that the award may be made and published, within thirty days from the date hereof. Said manufacturing company are to remove, at their own expense, all buildings standing on any part of said railway location, within twenty days, except the cotton house, which may remain where it is, until the first of January next. Said railroad companies

have the right to commence forthwith, the construction of their road-bed across the lands of said company."

The land mentioned in said agreement, which was to be conveyed to the defendants, was owned by the plaintiffs, as an estate in fee simple, and was situated near the manufacturing establishment of the plaintiffs. The sum of thirty-five hundred dollars, mentioned in said agreement as a part of the consideration thereof, was the same money paid by the defendants to the plaintiffs, for damages assessed to them, on account of the first location of said railroads, prior to the 29th day of August, 1849.

Within ten days after the execution of said agreement, the plaintiffs gave notice in writing, to the defendants, that they preferred to submit to arbitration the question, as to the amount which should be paid by the defendants, for a deed of said land, as provided in said agreement, and afterwards, on the 10th of September, 1849, the defendants informed the plaintiffs, that they should not perform, or abide by, the terms of said agreement on their part, and expressed a desire, that some other arrangement between the parties might be made, which would settle and adjust all matters of difference between them. The parties thereupon entered into negotiations, for the adjustment and settlement of said matters, which resulted in a second agreement between them, which was as follows:

" Whereas the Hartford, Providence and Fishkill Railroad Company, the New London, Willimantic and Palmer Railroad Company, and the Windham Cotton Manufacturing Company made an agreement, in relation to the rights of way necessary for said railroad companies to have, whereupon to construct their railroads, which agreement was dated at Willimantic, Aug. 29, 1849: and whereas, in a certain contingency, the damages to be paid to said manufacturing company, by said railroad companies, was to be left to the appraisal of three men, named in said agreement: now therefore, to save the expense and delay of an appraisal, and

to settle the case finally, and to the mutual satisfaction of all parties interested, we, whose names are hereunto subscribed, agree for the companies, by whom we are respectively employed, as follows:

" Said railroad companies are to make and maintain a bank or retaining wall, on both sides of the excavation, from the eastern side or line of said Windham Company's land, through the meadow, of five feet in height, or to the surface of the ground; from thence to the garden lot, said railroad companies are to make and maintain a bank wall, of two or three feet in height, above the general surface of the ground, on the northerly side of the excavation, and also a wall four and one-half feet in height, or to the surface of the ground, on the opposite side of said railroads; from thence, through the said garden lot, the said railroad companies are to build, and maintain, a bank wall of at least five feet in height, on the northern side of said railroads, and to make a lawful fence on the opposite side of the same; and for the purpose of building said walls, the said railroad companies are to have such old walls in the vicinity as have been agreed upon. Said Windham Manufacturing Company reserve the right to make, at their own expense, a bridge, for foot passengers, over said railroads, so as not to interfere with the operations of the same; and said railroad companies are to make all other needful fences, if any are necessary, to fence their railroads, and to make suitable gates through the same, at two convenient places; the crossings and gates to be made to the satisfaction of said Windham Cotton Manufacturing Company, and said railroad companies agree to make and maintain a turnout or side track, for the accommodation of said manufacturing company, from either or both of said companies' main tracks, at any time within five years from date, if required by said manufacturing company, and said manufacturing company are not to make any charge for the necessary lands therefor, and said railroad companies are not to pay to said Windham Company any thing for

fencing, as stipulated in the before mentioned agreement, as aforesaid, dated at Willimantic, Aug. 29, 1849, and said manufacturing company are released from making, and maintaining, the fences therein named.

"All other parts of the before mentioned agreement, dated Aug. 29, 1849, remain in full force and effect."

Immediately after said agreement was executed, said railroad companies went into possession of said land, and constructed their railroads across the same, and thereafter continued in the uninterrupted use and occupation thereof. The defendants made the walls, fences, and gates, mentioned in said agreement, as therein provided, but always neglected and refused to give to the plaintiffs, five shares of the capital stock of each of said railroad companies, and to make the crossings in said agreements mentioned.

In making, and entering into said agreement of the 11th of September, the parties well understood, and it was on the part of the defendants agreed, that the turnout or side track, in said agreement mentioned, if required by the plaintiffs to be laid, should be so constructed, as to enable the plaintiffs to load and discharge cotton, coal and other merchandise, which they might send, or receive, over either of the said railroads, at their store-house; and it was equally well understood between the parties, that if said store-house should be placed, as it subsequently was, on lands south of said roads, the turnout or side track, if required by the plaintiffs to connect with the track of the New London, Willimantic and Palmer Railroad, should cross the track of the Hartford, Providence and Fishkill Railroad, by means of switches, and thus form what is termed a "connection" therewith, and that the same should be extended thence to said store-house. A turnout or side track from the New London, Willimantic and Palmer Railroad cannot be constructed, so as to enable the plaintiffs to load and discharge merchandise sent, or received, by them over that road, at their store-house, or furnish them with the accommodation contemplated by said

agreement, unless connected with, or extended in some other mode, across the said Hartford, Providence and Fishkill Railroad.   The committee, however,found that a side track, laid or constructed in such a manner, would, unless managed and used with proper care and prudence, expose the public, traveling over said railroads, to serious danger from collisions and other causes ; but if the same were under the supervision of the said railroad companies, and a reasonable degree of prudence and care were exercised in its management and use, the danger arising therefrom would be very slight and scarcely appreciable.

Soon after the defendants went into possession of said lands, and before said railroads were graded, the plaintiffs gave them notice that they required a turnout or side track, to be made for their accommodation, from both said railroads, as provided in said agreement of the 11th of September; but the defendants neglected, and refused, to make the same.   Some time in the month of November, or December, 1850, the New London, Willimantic and Palmer Railroad Company procured the requisite materials and put in the necessary ties and frog, for said turnout or side track, and were about to lay the rails thereof, when they were prohibited from proceeding with, and completing the same, according to the understanding and agreement of the parties, by said Hartford, Providence and Fishkill Railroad Company.

The committee further found, that said turnout or side tracks, if made according to said understanding and agreement, would be of great value to the plaintiffs; and the want thereof would subject the plaintiffs to much inconvenience in carrying on their business, and be seriously detrimental to their interests.

On the first day of December, 1851, the plaintiffs prepared and executed a deed, in proper form, conveying to said railroad companies, jointly, the lands mentioned in said agreement of the 29th of August, and exhibited the same to

the said Hartford, Providence and Fishkill Railroad Company, on the 13th day of December, 1851, and to the said New London, Willimantic and Palmer Railroad Company, on the 15th day of December, 1851 ; and the plaintiffs then informed said railroad companies respectively, that said deed was ready for delivery, and would be delivered to them, whenever they performed said agreements on their part.

But the committee did not find that the deed, so exhibited to the defendants, or any other deed conveying to them said lands, was ever delivered by the plaintiffs.

At the term of said court, holden in October, 1853, the defendants filed a remonstrance against the acceptance of this report, when the following facts were found by the court.

Said Hovey, at the time of his appointment as committee, and until the 20th day of August, 1853, was the owner of seven shares of the capital stock of the Phœnix Bank, an incorporated bank, and Jemima L. Hovey, his wife, was the owner of eight shares of the capital stock of said bank, which were standing in the name of Moses Ensign, as her trustee, until the 7th day of September, 1853, when said trustee transferred the same to her on said books, and, during all that period, said Jemima L. was the wife of said Hovey, and the sole owner of said eight shares in said bank, and the president, directors and company of the Phœnix Bank, during all the period aforesaid, had eighty-five shares of the capital stock of said railroad company, standing in the name of said bank, upon the books of said railroad company, but the said bank never owned said shares, but merely held them as collateral security for moneys loaned.   On the 22d day of August, 1853, the parties, by notice of that date, were cited to appear before said committee, at Willimantic, on the 31st day of August, 1853, when and where the parties appeared, and the said railroad company, upon the facts stated in their remonstrance, objected to said Hovey's acting in said case, claiming that he was disqualified; but said Hovey, notwith-

standing the objection, and, although his wife was the owner of stock as aforesaid, did proceed in the trial of said case.

The questions, whether the facts proved by said superior court were sufficient to set aside the report of said committee, and if said court should be of opinion, that they are not sufficient for that purpose, whether, upon the facts contained in said report, the plaintiffs were entitled to the relief prayed for in their bill, and if so, what relief,—were reserved for the advice of this court.

*Foster*, for the plaintiffs.

*E. Perkins* and *R. D. Hubbard*, for the defendants.

ELLSWORTH, J.   A question is made, whether the report of Mr. Hovey is not open to objection, inasmuch as, it is said, he was a party in the suit, or at least had an interest in the event of the suit.

It appears that the wife of Mr. Hovey was a stockholder of the Phœnix Bank, during the time he was acting as a committee; her stock stood, a part of the time, in her own name, and before that, in the name of her trustee.   The Phœnix Bank was a stockholder of the Hartford, Providence and Fishkill Railroad Company, holding eighty-five shares, as security for money borrowed.   The defendants claim, first, that Mr. Hovey was a party, and could not act as a committee, and secondly, that he was interested as a party, and could not act as a judge or committee man.

We do not think Mr. Hovey or his wife was, in strictness, a party in the cause, however it may be as to interest.   For certain purposes, it is true, as in *Wood* v. *Hartford Fire Ins. Co.*, 13 Conn. R., 210, and in *English* v. *Smith*, 221, and other cases, we have held, that where it is necessary in order to take jurisdiction of the case, or to maintain a pure administration of justice, we can look through the charter of a corporation, to the individuals who are united under it, and who really

possess its property and franchises; but we do not think that
the doctrine has ever been carried, or ought to be carried, to
the extent now claimed.   Correctly speaking, the stockhold-
ers of an incorporated company are not the parties on record;
they do not sue, neither are they sued, nor do they employ
counsel, or control the suit, nor are they liable for damages or
costs, nor are their acts or admissions admissible in evidence;
but on the other hand, they may be sued by the company,
and may themselves sue, in turn, in all respects as if they
were strangers and uninterested.   The members of *quasi*
corporations, such as the inhabitants of towns, societies, dis-
tricts, &c., are in a higher sense parties in a suit; for they
may appear as parties, may employ counsel to conduct the
cause, and are personally liable for damages and costs.   *At-
water* v. *Woodbridge*, 6 Conn. R., 223.   *McLoud* v. *Selby*,
10 Conn. R., 390.   In other corporations, there is sometimes,
as we have said, in order to take jurisdiction, a necessity to look
through the charter, as was done in *Wood* v. *Hartford Fire Ins.
Co.*, 13 Conn. R., 210.   *Bank of Augusta* v. *Earl*, 13 Pet., 521.
But even then, the application of the principle is limited by
the peculiar circumstances of the cases.   Church, Ch. J., in
the first case, expresses himself thus: " We do not dispute
the general principle, that the corporation, in its corporate
capacity, is the responsible and actual party, and so to be
regarded, and treated, in all cases where no actual necessity
exists, of looking beyond the form of its being, and therefore
we admit, with the defendants, that a corporator cannot
control an action in which the corporation is the party; that
his confessions cannot affect the corporate interests, and
indeed, that he may even prosecute an action against the cor-
poration of which he is a member."   In the present case, we
see no occasion nor necessity for holding, that the numerous
stockholders of the Phœnix Bank are stockholders of the
Hartford, Providence and Fishkill Railroad Company, or are
to be treated strictly as defendants on the record, and there-
fore we hold, that the first objection to Mr. Hovey's capacity

to act, is not well sustained. To hold otherwise would, we think, lead to great perplexity and confusion.

There is more difficulty with the second objection. It must be agreed, that interest in the event of the suit, whether for or against the party raising the objection, is a disqualification for judicial action. It must be so, whether we infer it from our statute which declares a judge to be incompetent to act in cases much less objectionable than this, or from the common law, which does not allow a man to be judge in his own case. Here, the Phœnix Bank are certainly interested as stockholders, and Mr. Hovey is a stockholder in that bank. It is said, his interest is too remote and contingent, not fixed nor appreciable. Waiving this point, and assuming, as most of the court believe the law to be, that Mr. H. had an interest which disqualified him, still we think the objection of interest must be overruled; for we hold, that the defendants have waived it, by not making it at the time the committee was appointed, or as soon after as they had knowledge. This is the rule in relation to jurors, creditors and county commissioners, as we have decided in numerous cases, and as is decided elsewhere. *Groton & Ledyard* v. *Hurlbut*, 22 Conn. R., 182. *Quinebaug Bank* v. *Leavens*, 20 Conn. R., 87. *Crone* v. *Daniels*, 20 Conn. R., 331. *Selleck* v. *Sugar Hollow Turnpike Co.*, 13 Conn. R., 453. In this last case, the court held, as to a juror, that the motion in arrest is bad, unless it is stated therein, that the party moving for the new trial did not know of the disqualification, before the verdict was rendered in court. The court say: "It is not alleged in the motion, nor does it any where appear, that the defendants did not know of this objection, at the trial. If they did, they were bound to make it at that time. A party cannot be permitted to lie by, after having knowledge of a defect of this kind, and speculate on the result, and complain only when the verdict becomes unsatisfactory to him." These remarks are applicable to the case before the court. For aught we know, the defendants favored, or at least acquiesced

in the appointment of Mr. H., when they could have objected to him, and another person would have been appointed in his place.   Ignorance at that time was an all important fact. Therefore, when the report was presented to the superior court, the defendants should have stated, and then they would have been permitted to prove, that they were ignorant at the time the committee was appointed, if it was so ; certainly we cannot assume it.   This rule of law is most reasonable in itself, and indeed it is well nigh indispensable, if there is to be an end to litigation ; and we see not why the plaintiffs are not entitled to the benefit of it in this instance.   We conclude therefore, that the report is unobjectionable, and must be accepted.

, Still, a most important question remains to be decided, one which has engaged much of our attention, and is not free from difficulty.   What decree shall be passed upon the report, when accepted ?   It is most obvious that the defendants are liable to the plaintiffs on the contract of the 11th September, 1849, wherein they stipulate " to make and maintain a turnout or side track for the accommodation of the petitioners."   They have neglected and refused to do this, and are liable to be sued for the injury to the plaintiffs, or there may be a specific performance ordered in chancery, as the court may think best.   The plaintiffs insist, and perhaps with propriety, that the latter is the proper and only certain and adequate remedy.

We can, undoubtedly, if we think it best, decree a specific performance, or, when we take a just and enlarged view of the public and private interests involved, leave the plaintiffs to their remedy at law ; but the latter course is unsatisfactory to the plaintiffs, and it may be unequal and unfair, in view of its inadequacy, and we may be bound to give them a specific execution, if the request can be granted in a reasonable and prudent manner.   The contract or obligation, in one sense, is indefinite and ambiguous.   " The respondents are to make and maintain a turnout or side track for the accom-

modation of the plaintiffs, from either or both of said companies' main tracks, at any time within five years," &c. The exact mode is not pointed out, and the plaintiffs seem to have been permitted to introduce parol evidence without objection, to show exactly what the parties expected and agreed, at the time, should be done. Whether this testimony was admissible or not, if objected to, we have no occasion to enquire, for upon this part of the report we have not come to any definite conclusion. The mode expected, it seems, was, if the plaintiffs wished, as they subsequently have done, to pass from the track of the New London, Willimantic and Providence railroad, which lies northernmost, to and upon the track of the Hartford, Providence and Fishkill railroad, and thence, by switches, forming a communication with said last mentioned track, passing along upon it, and thence to the storehouse of the plaintiffs, which lies on the south-west side of the track. This is what the plaintiffs claim they are entitled to, under said contract and the cotemporaneous understanding. The Hartford, Providence and Fishkill railroad company insist, that the writing is indefinite, and does not point out any particular mode of crossing their track, but only that it is to be done in some reasonable mode, and they say, that the mode asked for by the plaintiffs is not reasonable, but quit eotherwise and unnecessary, and that if adopted, it will work a most serious if not ruinous injury to their road; and besides will endanger the public travel, from collisions and other accidents. They say that a turnout can be made on the south side of their own track to the plaintiffs' storehouse, and that another turnout can be made on the north side of the track of the Hartford, Providence and Fishkill company, extending down a short distance, and thence connecting with the storehouse by crossing, at right angles, the tracks of both companies; that this will give the plaintiffs all they have occasion to enjoy, and that it will not greatly injure the defendants, nor endanger public travel. On this point, the report is not as full as we could wish. It says

"that a single side track laid as the plaintiffs demand, would, unless managed and used with proper care and prudence, expose the public travel along said railroads to serious danger from collision and other causes; but if the same were under the supervision of the railroad companies, and a reasonable degree of prudence and care were exercised in its management and use, the danger arising therefrom would be very slight and scarcely appreciable." It is to be observed, that the report does not say, that this particular mode is indispensable or necessary, nor that some other and perhaps the one pointed out by the defendants, would not answer as well, or nearly so. Perhaps Mr. Hovey did not feel at liberty to take this range in his examination. He seems to have directed his attention chiefly to the practicability and propriety of the mode, which he says the parties contemplated in the outset, and even as to this, he has expressed himself with not a little caution, and has annexed numerous and important provisions and conditions, sufficiently significant and pertinent to induce us to pause before we adopt it. Furthermore, we are satisfied, if we may appeal to universal observation and all past experience, that this mode is not free from imminent danger to the public, from interruption and collisions, and especially when we consider that imprudence and carelessness are, to a great extent, incident to the thing itself, if not almost inevitable. We shall not, we are persuaded, approve of this mode at all, but shall rather leave the plaintiffs to their legal remedies, than decree such a specific performance. On the whole, we have concluded, that the report shall be accepted, but that there must be a further hearing, as the superior court shall direct, as to the best mode of making a turnout, or side track, for the accommodation of the plaintiffs.

In this opinion the other judges concurred, except CHURCH, C. J., who was absent.

Report accepted, and further hearing to be had.